Liberty Insurance Corporation v. Hudson Excess Insurance Company And Mr. Milito, I see you reserve two minutes for rebuttal. Yes, Your Honor. You can begin whenever you're ready. I'm ready, thank you. All right. May it please the Court, we are here appealing two aspects of the District Court's decision. First, the ruling that granted indemnity insurance coverage to Liberties Insured 45 John, and second, the award of legal fees against Hudson for failing to pay in a vexatious manner without a reasonable basis. Turning to the first issue of indemnity, the error committed by the District Court was in granting indemnity coverage to 45 John without a finding in the underlying case that the Hudson insured skittles was guilty of some fault in having caused the accident. The endorsement that grants the coverage does sell for liability caused in whole or in part by your act or omissions in the course of your ongoing operations for the additional insurer. It was your insured scaffold, right? In dispute. Our insurer- Well, there's a finding of fact that it was, and this was a bench trial, right? In this case, well- Yes, in this case, this was a bench trial. Yes, in the underlying case, no. And in the record, the District Court noted that there was testimony, apparently she found it credible, and that the scaffold was owned by your client. I'm not sure. It was built. Well, let me ask you this. If we find that the District Court had correctly or that we couldn't overturn that and that there was such a finding, does that change your answer? No, it does not, because under New York law, whether there's coverage for indemnity under this endorsement- Right. Turns on what happens in the underlying case. Right. If Skittles, our insurer, is found guilty of fault in the underlying case, then there's indemnity coverage. If there's a possibility of fault, there's defense coverage. In the Burlington case, which interpreted this endorsement, New York court- What's the story with the state court case? Pardon? What's the story with the state court case? The state court case, two and a half years ago, they moved for summary judgment against Skittles. The court denied it, saying that there was a question of fact as to whether the work was outside of Skittles- I understand. Has it gone to trial?  Skittles, I have right here, November 13th, Skittles was granted summary judgment and let out of the case. You can take judicial notice of that. Wait a second. Why didn't you tell us that? Well, it happened after all the briefing was done. Did you ever hear a 28-J? I apologize. You want us to- It's not in the record, counsel. Well, you can take judicial- No, I'm not going to take judicial notice of anything. I find this incredible. Well, I thought I looked at that and I wasn't sure this fell within that category. Fair enough. Well, your Honor- Skittles was granted summary judgment? Yes. It's on appeal. So, maybe they'll be brought back. Maybe they'll be finding a fault someday. The bottom line, your Honor, is- Don't you think that we would have been interested in that? We spent a lot of time preparing for this. I'm sorry, if I thought- You're out of the state court proceeding. Yes. Well, I apologize. I thought it was not clear that I was allowed to submit that to the court. Maybe you should have tried and found out what you couldn't have. Obviously, now I wish I had, yes. I bet you do. Yes, I wish I had. But, your Honor- I find that astounding. Well, but you see, part of my- If you want to go through other things that come up short, you were found by the Workers' Compensation Board. He was found to have been within the scope of his employment, wasn't he? Yes. Yeah, you're probably collaterally stopped with regard to that. No, that's not binding in the underlying case. You don't think so? No, it's not. We're let out in the underlying case. Well, that's true now, now that you tell me. Yeah. Well, it's not binding on the insurance. Hudson is not a party to the Workers' Comp ruling. So, when we're dealing with what the insurance covers, what happens in the Workers' Comp- there's case law in New York on that. Hudson didn't write the comp policy, too? No. Okay. Okay, stay front. So, all of that, in our opinion, is irrelevant, because the case law in Burlington, in the declaratory judgment action, you cannot make a determination of fault. It's in the underlying case. And unless and until, in the underlying case, there's an act or omissions found, there's no coverage. Burlington, and many, many cases following it, it's not the role of the declaratory judgment court to rule on those issues. It looks to what is going on in the underlying case, and there's not been any finding of fault. So, this is error, and that should be reversed. Turning to the second issue, the New York Insurance Law 1213D Legal Fee Award, this is a very antiquated statute. It goes back to 1939, which you could tell by what it says, which is if you are unauthorized and you don't pay in a vexatious manner without reasonable cause, you pay a legal fee penalty of 12.5% of what you should have paid, or $25, whichever is greater. Okay, so this goes back 85 years. And in the 85 years that that statute's been on the books, there's not one case ever applying it to a general liability policy. And the reason for that is it does not apply to general liability policies. Did you happen to look at when the statute was recodified in 1984? Well, it was, yes. Did you happen to look at it? Are you saying the comma was added in 1984? You betcha. Yeah, okay. So the comma didn't exist prior in the precodification. Did you know that? I didn't know when it was added. No, you didn't know that. And did you know that Section 102 of the bill that recodified and brought all those sections into that section that specifically said that there was no intended substantive changes to the law? Why would you support your position? The comma is against my position, conceded. That comma, if you read the statute in a vacuum with the comma, it looks like it wants to say that Power Guess 13 governs personal. You say we should read it as if there is no comma there. I'm saying to read it as a whole. Here's the reason why. Section 1113 lists the types of policies that may be issued. You get the safe harbor if there's no comma, correct? Pardon? You get the safe harbor if there's no comma. Yes. Do you know what the prior bill said, the bill prior to this? No. There was no comma. And when this bill was passed, the bill jacket, which my colleague was very familiar with, said there was supposed to be no substantive change to that bill. It was a mistake. And here's the reason why. It was a scrivener's error, wasn't it? The comma was a scrivener's error, yes, because Section 1113 lists every kind of policy that's permitted in New York. It opens out by saying these are the policies that are permitted. What we're doing and what I'm doing is basically making your argument. Oh, sorry. It's a scrivener's error. I don't understand. You've been resisting every question we've asked, all of which were friendly. I really appreciate your style. I'm sorry. Maybe it comes from representing a carrier for so long. Just maybe. But it has to be general liability, that paragraph, because without it, they're not permitted in New York, which is insane. Because look at the bill jacket. You'd find that I was in the state legislature at the time. No wonder you know so much about this, Your Honor. No, no. Actually, a really smart law clerk for one of my colleagues found this. Okay. Because you didn't. Well, I guess I'll reserve the rest of my time for the court. Thank you, Your Honor. All right. Mr. Potashner. Yes. May it please the court. I'm Marshall Potashner for Appellate Liberty Insurance Corporation. First, I want to apologize because I also did not inform the court of what happened. I am not involved in the underlying case. I actually looked it up yesterday to see because I figured that was going to be a question. Yeah. What happened? We might be remotely interested. Right. So let me tell you. I looked at the decision. And the cake, all claims against Skittle were dismissed but not on the merits. The common law claims were dismissed against Skittles based on workers' comp immunity. The contractual indemnity claim was dismissed because the court said it's not a clear agreement to contractually identify and contractual indemnity agreements are construed narrowly. So there's no contractual indemnity. Common law claims dismissed. Contractual indemnity claims are dismissed. Causation was not decided down there whether Skittles was a cause or not. And it will never now be decided. So, in reality, this was the only place. So you're saying it's not inconsistent with the district court's findings? Definitely not. But also the district court has one unique fact that was not involved in the underlying case. And I think that's key here. Because their only really dispute was, and it's in their brief, not how the accident occurred, but whether this contract applied to this accident. But they stipulated, it's in the record, they stipulated that this contract applies to this accident. It's in the record at 8-1056 to 8-1057. And thus, the only issue that was an issue in the underlying case, and by the way, the duty to contractually identify is different than the duty for AI coverage. They never contested at all in the trial that there was a contract requiring them to provide AI coverage. That's why they picked up the defense, and they're not disputing that. Your Honor raised the issue about workers' comp. The workers' comp finding, and by the way, the finding in the underlying action, that Mr. Juarez was an employee of Skittles, is binding on Skittles. Pursuant to New York workers' compensation law, section 118-A. And it being binding on Skittles, it's binding on Skittles insured. You can't contest that finding, that this guy was working as an employee of Skittles at the time of the accident. Now, let's look at the other- Well, let me just ask you a question. If we were to conclude that the district court should have waited for determination of fault with respect to the underlying action based upon the cases that are cited, Brees and Vargas, what you're saying is there's never going to be a determination now in the underlying action because it's over. It made no determination of fault, and there will never be a determination of fault. Is that accurate or not accurate? That's exactly accurate. But moreover, in this case- What's the moreover? There's that. Okay, yes, Your Honor. I just want to- I don't know. Is there a moreover? What's the moreover? Well, the only point I was going to say is that regarding the cases, none of the cases require the coverage court to close their eyes and ignore reality. If there was a dispute of fact, if they raised anything that was a dispute of fact as to the cause of accident, then I agree it should be sent. It first should have been there. But they didn't raise anything. The record is clear. It's undisputed as to the cause. It couldn't have been caused by anybody else other than Skills. It was their scaffold, their people. Skills' employee on the scaffold, Skills' employees put the scaffold together, and Skills' employee told Mr. Warris to go up on the scaffold and do his work. It had to be. You can't close your eyes on that. To address the issue on the attorney's- I know there was competing evidence before the district court, but this was a trial, so she made findings, she made a determination, and it was on stipulated facts. So, I mean, it's hard. She made a credibility without seeing anybody talk, for God's sakes. There wasn't really facts supporting anything about the accident. Their argument on facts was, well, was this really Skills' work? It was a Skills' employee who got workers' comp. It was Skills' work. Well, yeah, I think you're right about that in the sense that Sarah, I think, is saying there was a foreman who said, well, we weren't working there. I told him to work on the second floor. I wasn't there that day. He was supposed to just be doing painting. He was specifically not told to do demo work, which is completely contrary to what Warris said himself. Right. The issue is what they're trying to argue wasn't Skills' work, but how can they argue it in light of the workers' comp claim? Well, and, of course, the contract between Avicon and Skills had no definition of what the work was. Right, and I understand that, but they stipulated that that contract does apply to the work at issue in our case. Okay, all right. So that's not an issue. Turning to the attorney's fees issue, first to handle the vexatious, that's an issue. The quote was not clearly erroneous. In fact, the statute says it's implied it's vexatious if once you get sued, you change your mind, and that's what happened here. With respect to the argument on the statute, I think they got it right. Commas do have meaning. I understand the history, but- But, what's the but? You understand the history. But I understand you put it through the history. But I think you've got to read the statute as it is, if it's in plain- Why? I think it's plain English with the comma. Does it lead to an absurd result? No, I don't, because I think the purpose of the statute is to put pressure on insurance carriers who are not admitted, not subject to the regulation of the- That phrase, that last phrase, deals with economic injury, primarily. I mean, that's the only way that language makes sense. Well, that language makes- Only economic injury, not personal injury. I think that whether or not, and I think what you consider personal injury in common of the lacklier, that personal injury insurance is a defined term. And you look at it, it does have the comma, and I agree with the district judge. That phrase applies to the whole series, not just that last phrase. So where in the insurance law, then, is the authorization to write general and comprehensive liability policies? I don't think you'll find it. I understand the- I don't think you'll find it. I understand the difficulty of the argument. I'm not going to make something up. So that would be an absurd result, wouldn't it? No, I think- There is no- I mean, seriously. The statute was intended, it was a recodification. It was gathering together all the provisions of New York insurance law where New York had identified what risks could be insured where companies could write insurance on a particularized risk.  Right? And the risk was bodily injury arising from legal liability. Right? And you're saying now that to read that policy, it's only bodily injury arising from legal liability that's a result of professional malfeasance. Right? Yes. Then show me, show me in the statute where the policy you wrote is authorized. I cannot show you in a particular statute. You can't. Right, so that's nuts. Why would we interpret a statute in a way that's nuts? I mean, that's not what we do. You know, legislating is a nasty, inaccurate business at times. And so courts get stuck with undoing the mess at times. But for want of a comma, we should give an interpretation to a statute that writes New York's determination that general comprehensive liability is a risk that could be insured in New York out of the books? I don't think so. Do you? This is $4,000 you folks are arguing about. Is that it? You've run the clock up here today alone. I can't believe you're here. But in any event, this is about $4,000. Your Honor, I didn't bring us here. Okay? I wouldn't have appealed over $4,000. I'm not finding fault with you. Someone else made that decision. I'm just joking. And also you have the bill jacket. The bill jacket clearly says no substantive change. It was supposed to be no substantive change, right? It was clearly a scrutinous error. I was relying on the comma and the statute that's written. You want to submit an additional briefing on that? No, Your Honor. Not on a $4,000 issue, Your Honor. So you want to leave us in the dark? I'm sorry? Okay. One last thing. Clear up for me exactly why this is still a live issue in light of what happened at the state court. The state court just granted summary judgment as to what? Just as to Skittles. Based upon workers' company saying this guy was working as a- As to their own liability. Yes. The liability of 45 John and I think of Avalon is still ongoing. But the liability- I mean- Skittles' responsibility to provide you with additional insurance arises only if a Skittles employee approximately causes the injuries to wire us, right? Yes. Then how, if Skittles is out, can a Skittles employee have caused injury? Because they didn't rule on the merits. They ruled on workers' comp immunity. Under that theory, you'd never have AI coverage for anybody who is an employee of your subcontractor because the subcontractor- So they let Skittles out on the direct claim by wire us against Skittles. No, no, no. Workers' comp immunity applies to third-party actions. That law was changed about 20-some years ago. So workers' comp immunity bars all common law claims, contribution, common law indemnity, any common law claims against an employer, even if it's a third-party claim. So the claims by 45 John and Avalon, the common law claims were dismissed, not in the merits, workers' comp exclusivity. The contractual claims were dismissed, again, not because of a lack of causation, because they said there was no contract to indemnify. So Walrus didn't have a, quote, serious injury? No, serious injury has- oh, wait. Yeah, yeah, yeah. Yeah, Walrus did not have a- If he was seriously injured, then the workers' comp bar doesn't bar the indemnification- Yes. The contribution claims. They must have found that he didn't have a serious injury. They must have found that for them to dismiss the claim. Or nobody argued that it survives because it's a serious injury. But I apologize. This is so tangled. So you're saying then- so then you're saying, though, that you still have contractual rights with regard to as an additional insured because of the language of the Skittles policy and its definition of additional insureds and their responsibilities under their contracts with the general and naming the owner as an additional insured also? Yes, and that contract is established by the stipulation. They did that stipulation to avoid me for deposing Skittles. I was going to depose Skittles on this exact issue. They said, we don't want you to depose Skittles. We'll agree that that contract governs. And that's what's in the record. And it's still ordered by the district judge. All right. All right, thank you. Thank you, Your Honor. All right, Mr. DeLeo, you have two minutes. Thank you. What we stipulated to was that we signed this contract for the job. What we also stipulated to was our position was that this work was outside the contract. So that was not conceded. And that was the basis for the court to deny the first summary judgment against Skittles, saying it was a question of fact as to whether they were working under that contract. But now there's not going to be, you were arguing to us that the district court should have waited for a finding of fault in the underlying action. As a result of the summary judgment motion being granted, there's never going to be a determination of fault. Well, first of all, that's on appeal. They're trying to bring them back. They were arguing the contract was not vague. Let's assume the appeal is unsuccessful. Then there should be no indemnity coverage. If you look at Burlington, if you read the Burlington case and the cases below it, it's not the role of the declaratory judgment court to make any of those determinations. That is all for the underlying case. And in the underlying case, there has to be a finding of fault. If the party gets out for whatever reason and there's no finding of fault, then you don't- No, wait a second. There can still be a finding of fault. It's just that there's no right to seek contribution from you because the injury is not a serious injury. They'll still have to identify who caused Juarez's injury. The claim over has two premises. One is common law, which is barred by workers' comp if it's not a serious injury. The court ruled not a serious injury. The second basis for judgment over is the contract. Contractual indemnity against Skittles. You need some act or remission by Skittles for the contractual indemnity to- Yeah, for which-yeah. And so if he's working within the scope of his employment, his acts are attributable to Skittles. And I don't understand how the summary judgment precludes it because the summary judgment didn't decide a contractual-the scope of the contract did it. Yes, well, it decided that the contract was vaguely written and didn't necessarily apply to this work. And the court dismissed it. But it's not the role of this court. Let me say something else. The court below did not find fault. She found it was not necessary to find fault. That is wrong. Read Burlington. Read the progeny of Burlington. The phrase caused by your acts or omissions, the New York Court of Appeals said that means there must be some fault. It doesn't have to be 100%, but there must be a finding that it was their fault. Not that it arose out of their work. That's the old endorsement. Not that it was their employee. You could have an innocent employee injured through somebody else's fault. Well, at the time-let me ask you this. At the time of trial, if the jury were to decide that the scaffolding was negligently put together by Skittles' employees, there will be a finding of fault as to Skittles. Skittles can't be held responsible for it. No, they will. Right? No, they will based on contractual- Excuse me. Would that finding then entitle the general and the owner to indemnification and their policies to require you to pay? If, in the underlying case, there's a finding of fault against Skittle, yes, there's indemnity covered. But you need that finding, and it's got to be in the underlying case, not in the declaratory. And that underlying case is still ongoing. Okay? And, frankly, the ruling letting Skittles out on that basis may not hold, and they may be back in. But you have to wait for that. It's not for this court to rule on those issues. It's really for the underlying case. All right. Thank you both for a reserved decision. Have a good day. Thank you.